IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.:  3:24CR00005-001 |
| | ) | |
| VINCENT HOPSON | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

Defendant Vincent Hopson, by counsel, hereby submits the following reply to the Government's response to Defendant's Sentencing Memorandum and Motion for Downward Variance:

## I. The Sentencing Guidelines Should Be Afforded Little Weight In Determining An Appropriate Sentence For Mr. Hopson

In its Response, the Government argues that the Guidelines should be afforded significant weight in determining an appropriate sentence for Mr. Hopson. As discussed more fully below, and in Mr. Hopson's initial briefing, the Child Sexual Abuse Material ("CSAM") Guidelines are flawed and should be afforded little weight in relation to the other 18 U.S.C. § 3553 factors.

### A. The Sentencing Commission's Criticisms Of The CSAM Guidelines Deserve Substantial Consideration

In response to Mr. Hopson's citation to several reports authored by the Sentencing Commission criticizing the CSAM Guidelines, the Government points out that said reports have not ultimately resulted in the amendment of the Guidelines by either Congress or the Sentencing Commission. Dkt. 25, p. 2. The implied argument by the Government is that it would not be appropriate for the Court to consider the points raised in these reports in weighing the factors

under 18 U.S.C. § 3553. This argument has been expressly rejected in *United States v. Pickett*, 475 F.3d 1347 (C.A.D.C. 2007).

In *Pickett*, the issue was whether the District Court committed a legal error when it failed to consider the problems, which were heavily detailed in a Sentencing Commission report, created by the 100-1 ratio for crack versus powder cocaine then set forth in U.S. Sentencing Guidelines Manual § 2D1.1. *Id.* at 1350-51. The Court found that *United States v. Booker*, 543 U.S. 220, 245, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) resulted in the trial Court being required to determine "how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)." *Id.* at 1353. The Court relied heavily on a Sentencing Commission report criticizing the ratio in reaching the conclusion that the District Court's failure was not harmless error, which resulted in a reversal and remand of the District Court's decision.

The Court expressly rejected the argument that a sentencing Court's consideration of a Sentencing Commission report would "frustrate the will of Congress" where the report's recommendations had not been adopted by Congress. *Id.* at 1355. Specially, the Court noted that "Congress has set statutory minimums and maximums. As to where within that range a particular defendant's sentence should fall § 841(b) [the statute of conviction] is silent." *Id*.

The Court further noted that the failure of a subsequent Congress "to act on Commission recommendations is of no moment. [Footnote omitted]. But it remains of great importance that, in its recommendations, the Commission candidly and forthrightly exposed the weaknesses and failings of its Guideline with respect to crack cocaine sentencing." *Id*. Thus, under *Pickett*, consideration of the Sentencing Commission's own published analyses of the Guidelines (whether relating to crack-cocaine or CSAM) is appropriate, and a failure to do so may well constitute reversible error when it results in the Court neglecting to consider relevant information

in determining how much weight to assign to the Guidelines in the context of the § 3553 analysis.

### B. Congress' Purported Intent To Punish CSAM Offenders "Severely" Would Be Adequately Served By Sentencing At The Five-Year Mandatory Minimum

In addition, the Government cites *United Staes v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) and *United States v. Goff,* 501 F.3d 250 (3d Cir. 2007), to support an argument that Congress intended for CSAM offenses to be treated "severely," including by legislating against CSAM for more than 30 years. Dkt. 25, p. 2. However, it should be noted that Congress chose to establish a five-year mandatory minimum for CSAM receipt offenses, which suggests Congress' acknowledgment that at least some receipt offenders would be adequately punished by such a sentence. It is submitted that for Mr. Hopson, a 66-year old with no prior criminal history, a five-year sentence of incarceration reflects an already severe punishment that adequately serves the purposes of sentencing as set forth in § 3553.

### C. That Certain Other Offenses Result In A Higher Guidelines Level Than § 2G2.2 Does Not Contradict The Conclusion That § 2G2.2 Is Flawed

The Government contends that § 2G2.2's higher base offense level for receipt of CSAM as compared to an offense which involves illegal sexual contact between an adult and a minor does not merit assigning less weight to the Guidelines in the context of the § 3553 analysis. In support of the argument, the Government provides examples of offenses more serious than receipt of CSAM which carry higher base offense levels than §2G2.2. Dkt. 25, p. 2. However, this is a flawed argument.

Simply because the Guidelines assign a lower base offense level for receipt of CSAM than

3

for other more serious child exploitation offenses does not contradict the reality that § 2G2.2 nevertheless involves a *higher* base offense level than for actual contact offenses involving minors.

This reality supports the conclusion, echoed by many Courts, that "[t]he child pornography Guidelines has been recognized as an 'eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.'" *United States v. Helton*, 782 F.3d 148, 157 (4th Cir. 2015) (citing *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (Gregory, J., concurring opinion). That § 2G2.2 *sometimes* appears reasonable in relation to other Guidelines covering more serious offenses does not overcome the fact that, in this case, as applied to Mr. Hopson's offense of Internet-based receipt of CSAM, the Guidelines recommend that he be treated more harshly than an offender who engaged in the statutory rape of a 12-year old child. *See*, U.S.S.G. § 2A3.2.

By virtue of the Guidelines' advisory status, and the fact that the Guidelines are but one of many factors the Court is to consider under § 3553, this Court is empowered to prevent such an injustice from occurring by assigning the recommended Guidelines range relatively little weight.

### D. The Five Level "Number Of Images" Enhancement Erroneously Suggests Mr. Hopson's Offense Is Aggravated.

The Government maintains that the 5-level enhancement for the number of images possessed by Mr. Hopson is appropriate in that it "attempts to somehow capture the relative harm caused by the defendant's conduct." Dkt. 25, p. 3.

It is submitted that in the modern age, where the average offender routinely possesses thousands of images and obtaining such a volume of images is as simple as clicking a mouse, the number of images and videos possessed by Mr. Hopson does not render his offense substantially

aggravated in relation to others. As with many other aspects of § 2G2.2, the "number of images" enhancement is a relic of an earlier, pre-Internet, era and no longer accurately distinguishes between levels of conduct severity.

## II. The Court May Properly Consider Sentencing Outcomes For Similarly Situated Offenders In Determining Whether A Particular Sentence Would Result In Unwarranted Disparities

Citing *United States v. Sueiro,* 59 F.4th 132, 2023 U.S. App. LEXIS 2749 \*\* (4th Cir. Feb. 3, 2023) the Government states that "the need to avoid unwarranted sentencing disparities is accomplished when the district court 'carefully review[s]s and calculate[s] [the defendant's] guidelines range at the sentencing hearing." Dkt. 25, p. 4. However, the Government's reliance on *Sueiro* is misplaced.

The Court in *Sueiro* qualified its decision by saying "*But here*, the district court necessarily gave significant weight and consideration to the need to avoid unwarranted disparities when it carefully reviewed and calculated Sueiro's guidelines range at the sentencing hearing." *Sueiro*, at 141 (*emphasis added*). Thus, the language relied upon by the Government applies only to the facts of the *Sueiro* case and does not serve as a broader precedent for other cases.

Moreover, the facts of *Sueiro* are distinguishable from the facts of this case. Unlike Mr. Hopson, the defendant in *Sueiro* was charged with more than just Receipt of Child Pornography. He was also charged with "possession of child pornography, attempted receipt of child pornography, and promotion and solicitation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), 2252(a)(4)(B), 2252(b)(1), 2252(b)(2), 2252A(a)(3)(B), and 2252A(b)(1)." *Id.* at 138. In addition, his offense conduct was distinguishable. Mr. Sueiro's case arose out of a very violent act of threatening to kill and essentially torture a female co-worker. *Id*. at 137. In his house,

police found a handgun and a ballistic vest.  *Id.*  Unlike Mr. Sueiro, there is nothing in Mr. Hopson's offense conduct that suggests he was prone to violence, threat, or intimidation.

18 U.S.C. § 3553(a)(6) instructs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records *who have been found guilty of similar conduct*."  (Emphasis added).  Mr. Hopson's conduct is materially indistinguishable from that of a simple possessor.  His act of receiving the materials by downloading them from the Internet (which is necessary in order to become a possessor in the first place, unless the much more serious offense of production is involved) does not constitute an aggravated act warranting a significantly lengthier prison sentence.  Thus, Mr. Hopson asks the Court to address the disparities created when an individual is charged with receipt (resulting in a mandatory minimum and a higher Guidelines range) by sentencing him consistently with the standard possession offender, who in 2019 received an average sentence of 47 months.  Dkt. 23, Ex. 12, p. 54.  Since a five-year mandatory minimum applies here, a 60-month sentence is appropriate and adequately satisfies the requirements of § 3553.

### III.     Conclusion

Based on the foregoing, Mr. Hopson respectfully requests that the Court impose the mandatory minimum five-year sentence of incarceration, a minimal financial penalty, and an appropriate term of supervised release.

Respectfully Submitted,

_____/s/_____

George Gorman, Esq. (#89200)
Noah D. Weisberg, Esq. (#48908)
Attorneys for Defendant
Weisberg & Weisberg PLLC
744 Thimble Shoals Blvd., Suite B
Newport News, VA 23606
Phone: 757-223-4130
Fax: 757-310-6926
noah@weisbergattorneys.com
george@weisbergattorneys.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of May, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following recipients:

Heather Hart Mansfield
United States Attorney's Office (Richmond)
SunTrust Building
919 East Main Street
Suite 1900
Richmond, VA 23219
804-819-5400
Fax: 804-771-2316
Email: Heather.H.Mansfield@usdoj.gov

Christopher Zychowski
Senior United States Probation Officer
Eastern District of Virginia
701 E. Broad Street, Suite 1150
Richmond, Virginia 23219-1874
(804) 916-2829
Cell (401) 388-0754
Fax: (804) 916-2550
Email: Christopher_Zychowski@vaep.uscourts.gov

                                                                         _____/s/_____
George Gorman, Esq.
Virginia Bar Number 89200
*Attorneys for Defendant*
Weisberg & Weisberg PLLC
744 Thimble Shoals Blvd., Suite B
Newport News, VA 23606
Phone: 757-223-4130
Fax: 757-310-6926
george@weisbergattorneys.com